IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:10cr48-MHT |
| GREGG WILLIAM GRIFFIN | ) | (WO) |

## OPINION

Defendant Gregg William Griffin pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The charge was based on Griffin's possession of a semi-automatic rifle, which he had fired into the air after his home had been burglarized. At sentencing, Griffin requested a downward "variance" from the advisory 30-to-37 month term of custody calculated pursuant to the United States Sentencing Guidelines. More specifically, while the government and probation urged that a sentence of 30 months, at the bottom of the guidelines range, would be sufficient, Griffin asked the court to sentence him to probation only. The court determined that a variance was warranted, but that probation alone would be an

insufficient sentence.  The court instead imposed a sentence of, among other restrictions, 28 days of incarceration followed by 12 months of three-day weekends in jail, with home detention in between.  This opinion sets forth the court's reasons in detail for the sentence imposed.

## I. BACKGROUND

### A. Offense Background

Griffin is a 40-year-old resident of Greenville, Alabama.  On December 22, 2009, he returned to his home to find it had been burgled.  He drove to an acquaintance's house to ask if he knew where the perpetrator was.  He told the acquaintance to tell the burglar to return his things, and he then fired a semi-automatic rifle a few times into the air before driving away.  The police were called and a witness identified Griffin in a car on an adjacent street.  The police stopped Griffin's car and saw an empty .22 caliber casing on the passenger seat.  Griffin got out of the car and

freely admitted that he had fired a rifle into the air. He then told the officers the rifle was in another parked car on his property, and the officers retrieved the rifle, six spent casings, and one live round and took them into evidence. Griffin was indicted in April 2010 and arrested the following month.

### B. Procedural Background

Griffin, who was on conditional release from a drug-possession charge at the time he was found in possession of a firearm, was charged with and pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Prior to sentencing, the Probation Office prepared a presentence investigation report, which explained that Griffin had a total-offense level of 12 and a criminal-history category of IV. Thus, Griffin had a Sentencing Guidelines range of 30-to-37 months.

Based on the plea agreement it had negotiated with Griffin, the government requested a sentence at the lowest end of the guidelines. The government's

sentencing memorandum cited Griffin's non-violent criminal history and the non-violent nature of the instant offense. In addition, the government observed that Griffin's past substance-abuse and anger-management problems had contributed to his criminal behavior. Probation similarly recommended a sentence at the lowest end of the range, 30 months, for the same reasons. Griffin, however, requested a variance of probation only. He emphasized that, as a disabled person whose only source of income was Social Security Disability payments, he would lose his home if he were incarcerated because the payments would cease and he could not afford the rent for his mobile home plot without them. He also pointed out that, since his arrest, he had completed a 28-day inpatient drug-treatment program and had also been attending anger-management classes and receiving mental-health treatment.

At a sentencing hearing on September 16, 2010, the court granted Griffin's request for a variance but determined that a term of custody was necessary. The

court sentenced Griffin to 28 days in jail, to be followed by 12 months of three-day weekends in jail from six o'clock p.m. Friday until six o'clock p.m. Monday, with home detention during the intervening periods when Griffin was not in jail.  Griffin was also ordered to continue substance-abuse and anger-management counseling, as well as to seek vocational training.


## II. DISCUSSION

Although district courts are no longer bound to follow the Sentencing Guidelines after United States v. Booker, 543 U.S. 220 (2005), they still must consult the Guidelines and take them into account when sentencing defendants.  United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005); see also 18 U.S.C. § 3553(a)(4)-(5).  After calculating the Guidelines range, the court may impose a more severe or more lenient sentence, as long as the sentence is reasonable.  Crawford, 407 F.3d at 1179.  The factors set forth in 18 U.S.C. § 3553(a) continue to guide sentencing and will necessarily inform

whether a sentence is reasonable.[1]  Booker, 543 U.S. at 261-62.  In addition, a court must consider any pertinent policy statements of the Sentencing Commission when making decisions about variances.  United States v. Irey, 612 F.3d 1160, 1218 (11th Cir. 2010).

After consulting the Guidelines and taking them into account, as well as considering the policies underlying them, the court imposed a sentence on Griffin that it believed was "sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), for the following four primary reasons:  First, Griffin had attempted to improve his personal circumstances.  Though he had spent the majority of his life in New York, the site of much of his

---

1.  18 U.S.C. § 3553(a) requires courts to consider: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to punish the offender, protect the public from the defendant, rehabilitate the defendant, and deter others; (4) the kinds of sentences available; (5) the sentencing range established by the Sentencing Guidelines; (6) any pertinent policy statements issued by the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need for restitution.

criminal history, he had moved to Alabama for a new start. But for the rifle-possession crime at issue, he had been doing well and avoiding criminal activity. He had also built a supportive community of family and friends. As a further effort at stability, he had also purchased a home. If Griffin, a person living with a disability, were sentenced to prison for a period exceeding 30 days, see 20 C.F.R. § 416.211(a), he would lose his Social Security Disability benefits and would no longer be able to afford his home.[2] Therefore, lifting him out of that environment for an extensive period of

---

2.  20 C.F.R. § 416.211(a) provides in part:

"(a) General rule.

(1) Subject to the exceptions described in paragraphs (b), (c), and (d) of this section and § 416.212, you are not eligible for SSI benefits for any month throughout which you are a resident of a public institution as defined in § 416.201....

(2) By throughout a month we mean that you reside in an institution as of the beginning of a month and stay the entire month...."

7

time not only would most certainly seriously undermine everything that he had already achieved, it would be greatly discouraging for him as well.

Second, it became apparent during his sentencing that Griffin was disabled and receiving Social Security Disability benefits due to his inability to do only work involving heavy lifting and that, if he could be enrolled in vocational training and taught to do other work, he could come off the Social Security roll.  Both Griffin and the Probation Officer agreed that this was an obtainable and worthy sentencing goal.

Third, the court credited Griffin's belief, albeit mistaken, that he was prohibited from possessing only a small gun that could clearly be used to commit a crime, as is the case under Alabama state law. See 1975 Ala. Code § 13A-11-72(a) ("No person who has been convicted in this state or elsewhere of committing or attempting to commit a crime of violence shall own a pistol or have one in his or her possession or under his or her control."). While his possession of a rifle rather than a pistol did

not in any way justify his commission of a crime, it was a mitigating circumstance.

Fourth and finally, the court was impressed by the circumstances under which the weapon was possessed. Griffin took and possessed a rifle for purposes of protection, rather than having a small gun which could have been used for criminal purposes. The fact that he possessed the rifle and used it to protect his home, while still illegal, is a mitigating circumstance. He acted on the spur of the moment, in reaction to the violation of his home. His actions, while not appropriate, are more understandable given the context.

The court found that, while none of the above four circumstances alone would justify the sentence imposed, in conjunction they did. With the § 3553(a) factors in mind, the court then fashioned a sentence based on the above circumstances but keeping in mind three goals: First, a sentence that would not only allow but would encourage Griffin to continue his movement toward a stable, crime-free life; second, a sentence that would

9

provide for substantial incarceration; and, third, a sentence that would encourage Griffin to move from reliance on Social Security Disability benefits to becoming an self-sustaining earner.

<u>A sentence that allowed and encouraged Griffin to continue his pursuit of a stable, crime-free life</u>: As stated, Griffin moved from New York, the site of much of his criminal history, to Greenville, Alabama for a new start.  But for the rifle-possession crime at issue, he appeared to be successfully pursuing that path.  He had purchased a home and surrounded himself with a supportive community of family and friends.  If he had been sentenced to prison for an extensive period of time he would have lost much, if not all, he had achieved after leaving New York: he would not only have been lifted out of that supportive Greenville environment, he would have lost his home, which was both a symbolic and literal emblem of his new life.  Of course, and of great importance, Griffin would have been discouraged by such a loss.

**Need for substantial incarceration**: Nevertheless, the court could not overlook that Griffin committed a serious crime. Also, and perhaps most, troubling was his extensive criminal record before he left New York. The court therefore rejected outright Griffin's contention that the court should place him on probation. Substantial incarceration was warranted. It would therefore appear that two of the court's goals--the need for Griffin to continue his current movement toward a stable, crime-free life and the need for substantial incarceration--were at odds. The court was however, convinced that both goals were achievable through available sentencing options.

The government and probation urged an advisory Guideline sentence of 30 months. Further, the court was convinced that the mitigating circumstances identified by the court above would warrant some downward variance from 30 months. Moreover, whether the sentence were 30 months or 25 months or fewer, Griffin would have served only roughly 85% of that time once good-time was deducted, see

11

18 U.S.C. § 3624(b)(1), with the result that a 30-month sentence would have meant only roughly 26 months and a 25-month sentence only roughly 21.  Against this backdrop, the court then began with a sentence of 28 days (for which there is no deduction for good time, see 18 U.S.C. § 3624(b)(1)), for that sentence would allow Griffin to keep his disability benefits and his home.  The court then added weekends in jail.  While in previous cases the court has typically provided for jail-weekends lasting for only two or three months, the court took the exceptional step of extending that period to a year in Griffin's case so as to help reach the substantial-incarceration goal.  Also, in previous cases these weekends in jail were typically for only two days (Saturdays and Sundays), but in Griffin's case the court took the added step of extending that period to three days (to include Mondays) for the same reason.  The court then added that Griffin's time between his weekends in jail would be on home detention, with radio frequency monitoring.  While, in the typical case, home detention

was for around six months, Griffin was given 12 months. Finally, another factor that could not be overlooked, though it was not critical, was that Griffin will serve his weekends in a county jail (whose facilities are, at best, adequate) rather than a federal prison with its variety of programs.

The court believed that, while this sentence would obviously not equal in absolute terms a lengthier sentence in a federal prison, it still provided for substantial incarceration and, at the same time, allowed for the achievement of the court's other important goal of allowing and encouraging Griffin to remain on his current path toward a stable, crime-free life.

<u>A sentence that encouraged Griffin to move from reliance on Social Security Disability benefits to becoming an able worker</u>: As stated, at Griffin's sentencing it became apparent that, with vocational training, he could be trained for a job that would relieve him of the need for Social Security Disability benefits. To be sure, he could have perhaps received

13

such training while in prison; in addition, such training could be, and indeed was, made a part of his supervised release period.  However, the court was impressed that such training had a greater likelihood of success if it were imposed as a part of Griffin's current, and for the most part successful, efforts to pursue a stable life in Alabama, a life about which he appears to be still quite positive and proud.  It was therefore quite important that the court-ordered vocational training for Griffin be a part of his current stable environment, as a home owner with a supportive community of family and friends--an environment in which, but for the current offense, he has already been reasonably successful.  Indeed, at sentencing, the court impressed on Griffin that it considered the vocational-training requirement to be one of the most important parts of his supervised release and that it expected him to be completely off of Social Security Disability benefits by the end of his three-year term of supervised release.

***

In conclusion, for the above reasons, the court believed that the sentence Griffin received met all the requirements of 18 U.S.C. § 3553(a) and was reasonable.

DONE, this the 21st day of September, 2010.

    /s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**